By the Court, Bronson, J.
I shall first consider the several objections which have been taken to the declaration in the suit against Colvill. The defendant is sued as a director of the Lafayette Bank, for several alleged violations of the statute containing “ regulations to prevent the insolvency of moneyed corporations, and to secure the rights of their creditors and stockholders.” The first section of the article provides, that it shall not be lawful for the directors of any moneyed corporation to make dividends, except from the surplus profits ; to divide or reduce the capital stock without the consent of the legislature; to discount notes for a particular purpose; to make loans or discounts *572 to directors beyond a certain amount; or to do other specified acts of the same general nature. (1 R. S. 589, § 1.) (a) The charter of the bank provides, that the stock, property and concerns of the corporation shall be managed by thirteen directors. (Sess. Laws of 1834, p. 369, § 14.) A majority of the directors may form a board for the transaction of business; and a majority of the board may do corporate acts. (1 R. iS. 600, § 6.) The acts of which the plaintiff complains are not such as could be *573 done by a single director. They could only be done by a board of directors, which could not be formed without the presence of seven directors at the least, of whom four must have concurred in the order which was made. I do not see, therefore, how it is possible to support the counts which allege that the defendant alone did the wrong. We see from the nature of the case that the thing was impossible. This objection applies to the third, fifth, sixth, seventh and eighth counts.
There are other counts which are not subject to this objection. But as the acts complained of could only be done by a board of directors, it is insisted that the action cannot be maintained against one alone—that all the wrongdoers, or at least so many of them as must necessarily have concurred, should have been joined. The case has been likened to the old action for a conspiracy, where the writ must be against two persons at the least; and if all but one are acquitted by the jury, the plaintiff cannot have judgment. But the rule is otherwise in the modern action on the case in the nature of a conspiracy. There, the plaintiff may have judgment against one, although all the others are acquitted. (Jones v. Baker, 7 Cowen, 445.) And as a general rule, when a number of persons have been engaged in an illegal and tortious act, they may be sued severally or jointly at the election of the injured party. It must be admitted, however, that those are cases where the wrong was of such a nature that it might have been done by a single individual; and I should feel some difficulty in saying that an action could be maintained against a single director, unless the case has been provided for by the legislature. We think it has. The statute upon which the action is founded, after declaring that it shall not be lawful for the directors to do certain things, provides in the 10th section, that “ every director who shall violate, or be concerned in violating any provision in the preceding sections of this article contained, shall be liable personally to the creditors and stockholders respectively of the corporation of which he shall be a director, to the full extent of any loss they may respectively have sustained from such violation.” In the preceding sections the word “ directors,” in the plural, had been *574 used; and we think the change in the .10th section to the words “ every director,” was made for the purpose of giving a several action against each of the wrongdoers. The argument against this construction is based upon the fact 'that the law of 1825 made the directors “jointly and severally” liable ; (Sess. Laws of 1825, p. 448, § 2.) And an alteration of the law is inferred from the change of phraseology. But we know that one object of the late revision was to amend the language of the law where there was no intention to alter the law itself. And besides, it is settled as a principle, that the mere change of phraseology in a revision of the statutes does not work a change in the law, unless it evidently appears that such was the intention of the legislature. (Matter of Brown, 21 Wend. 316.) No such intention can be inferred in this case. Indeed, it is difficult to suppose that the words “ every director” were not used for the very purpose of giving a several action against each one of them. They may be- sued separately, because the statute has so provided. But in declaring against one it must be alleged that he had the concurrence of others in doing the act, for the reason that he could not have done it alone.
The next objection goes to all the counts. It is, that the charter of the Lafayette .Bank is a private act, which should have been set out in pleading. Although it is a private act, the action is not founded upon the charter; but upon the general statute relating to moneyed corporations, which is a public act, of which we must take judicial notice. The objection is not well founded.
The action is given to creditors and stockholders respectively, who may recover to the full extent of any loss they may have Sustained. (§10.) The plaintiff sues as a stockholder; and in the first count, after stating the illegal act of the directors in making a dividend out of the capital stock, and not out of surplus profits, it is alleged that thereby the plaintiff’s stock became depreciated and of less value than it would otherwise have been; and the plaintiff thereby, and in consequence of such violation of the act, lost a large sum of money, to wit, the sum of fifteen thousand dollars. This shows with sufficient certainty *575 that the plaintiff has sustained a loss by the wrongful act of the defendants, and is entitled to some damages. It is said that the pleader should have shown how or in what manner the illegal act complained of caused a depreciation in the value of the stock. But I cannot think such a statement necessary. It is enough that the fact of depreciation is directly alleged. How it maybe proved is another question. This answer goes to the same objection taken to each of the other counts. They are not defective in the way of showing loss and damage to the plaintiff.
The first count is for making illegal dividends to the stockholders. It is said that the plaintiff must have received his dividend, and therefore that he cannot sue—that he is estopped to complain of the illegal act to which he was a party. There are- two answers, at the least, to the objection. It does not clearly appear that the plaintiff received the dividend. It may well he that other stockholders were paid, while the plaintiff received nothing. At the most, payment to the plaintiff can only be made out by argument and inference, and, in pleading, the fact on which an estoppel depends must be directly and expressly alleged. Again: if the plaintiff received the money he would not be concluded by that fact, unless he knew that the dividend was made from capital, and not from surplus profits. When a dividend was declared by the directors, the plaintiff had a right to presume that it was legally made. A man cannot be cheated into an admission which will conclude him as an estoppel in pais.
It is said that the statute has given an arbitrary rule for determining what are surplus profits; (§ 2, 3;) and that the plaintiff should have shown in the first count what he means by surplus profits. But it is enough that the law has settled what are the surplus profits, from which alone a dividend can be made.
It is alleged in the first count that the directors caused a dividend to he made to the stockholders. It should have been, that the directors made a dividend. The defendant has demurred specially for that cause, and I think the objection well taken. No one can make dividends but the directors. They cannot cause it to be done by others. After declaring how *576 much shall ho divided, they may direct the cashier or any other agent or servant to pay the money. But still, in judgment of law, the payment, as well as the order for a division, is the act of the directors. Certainty and precision are required in pleading, and material facts should be directly and positively alleged. As matter of evidence, facts may be made out by argument and inference; but in pleading they should be plainly and expressly stated. A man may be answerable for a trespass although he was not present when the wrong was done. Another person may have acted in obedience to his commands. But in pleading, the proper allegation is, that the defendant did the act himself—not that he caused it be done.
The third count is subject to the same objection. The allegation is, that the defendant caused and procured certain notes to be discounted for an improper purpose. The averment should have been that the directors did the act. That would have been supported by proof that they “ caused and procured” it' to be done.
It is further objected to the first count, that it should have been alleged that the directors knowingly made the dividend from capital, and not from surplus profits. But the statute says nothing about a scienter. It declares that it shall not be lawful to make a dividend, except from surplus profits. It was the business of the defendant and the other directors to inform themselves on the subject before they declared a dividend, and their ignorance can be no answer to the action. If they made diligent examination, and were misled by false entries in the books, or other erroneous information on which they might fairly rely, that may, perhaps, furnish an excuse for dividing capital instead of profits. But it lies on them to show the excuse. The plaintiff is not bound to allege that they acted knowingly, or in willing ignorance.
The same objection in substance is made to the fifth count, and the same answer may be given to it. It was the business. of the directors to know how much money had been loaned on paper upon which they were themselves responsible; and if the amount exceeded one-third of the capital stock of the bank, *577 they must answer to the creditors and stockholders for the loss which they may have sustained in consequence of the wrong. If there can be any excuse for such an act; it lies on the directors to show it.
Objections are taken to several of the counts for duplicity. The second count is said to be double, because it alleges that the directors did divide, withdraw and pay to the stockholders a portion of the capital stock of the bank, and did thereby reduce the capital stock without the consent of the legislature. The reducing of capital is not set forth as an additional or substantive' charge; but as a consequence of what had been before alleged. The directors divided a portion of the capital stock, and did thereby reduce the capital. A pleading is not double because it states the effect which was produced by the act complained of; nor for the ireason that several words or phrases are used to express the same thing. It is only obnoxious to' the charge of duplicity when it sets up two or more sufficient grounds of action, or matters of defence. There is no foundation for the objection.
The third count is said to be double, because it alleges that the directors received and discounted notes with the intent of enabling certain stockholders to withdraw portions of the money paid in by them on their stock. The statute makes it unlawful for the directors to “ receive or discount” notes with that intent. The pleader has cautiously," and I think very properly, substituted and for “ or,” and alleged that they both received and discounted the notes. This was not done for the purpose of showing two good causes of action; but only to make out one. Merely receiving .a note, whatever might be the intent, could work no possible wrong or damage to creditors or stockholders. No injury could arise until the intent was carried into execution by discounting the note, and thus enabling the stockholder to withdraw a part of the money he had paid towards the capital stock. The count would not have been good if it had stopped with alleging the receipt of the notes, and consequently there is no duplicity.
*578 The defendant is sued for improper conduct as a director in managing the affairs of the bank; and in some of the counts it is alleged, that within a certain period prior to the commencement of the suit there were a great number of wrongful acts of the same general nature. For example, the third count alleges that the defendant, within a specified time, caused and procured divers, to wit, two hundred notes for the payment of money, to wit, for the payment in the aggregate of $>200,000, to bex received and discounted with the intent of enabling certain stockholders to withdraw portions of the money which had been paid on their stock. It is said that because the count includes several distinct matters, it is bad for duplicity; and that it is also bad because the several matters are not particularly stated and set forth. These objections proceed upon the ground that each of the two hundred notes must form the subject of a separate count; and that the whole must be set out with names, dates, amounts, times of payment and of discounting, and the names of the stockholders who were thus enabled to withdraw portions of the capital stock. I am of opinion that no such multiplication of counts, or particularity of statement, was necessary. The plaintiff is a stranger to the transactions of which he complains, and it must be presumed that he is not acquainted with the minute circumstances of each particular case. (Patridge v. Strange, Plowd. 85; The People v. Dunlap, 13 Johns. 437; Postmaster General v. Cochran, 2 id. 413; . 1 Chit. Pl. 269, ed. of 1837.) The facts lie more properly in the knowledge of the defendant, who must be presumed conusant of the transactions to which he was a party. (Bradshaw's case, 9 Co. Rep. 60; Gale v. Reed, 8 East, 80; Com. Dig., Pleader, (C. 42;) Steph. Plead. 372; 1 Chit. Plead. 269.) And where a subject comprehends multiplicity of matter, or a great number of facts, there, to avoid prolixity, the law allows general pleading. (Hughes v. Miller, 5 Johns. 168; Post Master General v. Cochran, 2 id. 413; Barton v. Webb, 8 T. R. 459 ; Shum v. Farrington, 1 Bos. & Pull. 640 ; 2 Saund. 410, note 4; Steph. Plead. 359; 1 Chit. Plead. 270.) The case of Franklin Ins. Comp. v. Jenkins, (3 Wend. 130,) does *579 not necessarily conflict with the rule. I think the third count is neither double, nor bad for the want of sufficient certainty.
The same objections have been taken, and the same answer is applicable to the fourth, fifth, sixth, and seventh counts. They fall within the principle which has been mentioned.
The eighth count charges the defendant with a violation of each and all of the subdivisions of the first section of the statute, and is, I think, bad for duplicity. I see no sufficient objection against stating in one count that there were a great number of violations of any one subdivision of the section; but it would be going too far to allow the plaintiff to complain in the same count of several acts of a different nature.
The fourth count complains that the directors received from other stock corporations divers of the shares of stock of such corporations, and divers notes, bonds, and other evidences of debt issued by such corporations, in exchange for the shares, notes, bonds, and other evidences of debt of the said Lafayette Bank. It is objected, and I think the objection well taken, that it does not sufficiently appear that the exchange was made on account of the bank. The stock which the director's gave in exchange may have belonged to themselves, and not to the bank. So of the notes, bonds, and other evidences of debt which had been issued by the bank. Saying that they were notes, bonds, and other evidences of debt of the bank, is mere matter of description; and not an averment of property in the bank.
Some things remain to be noticed touching the suit against Emmet. The first three counts are like the first three in the suit against Colvill; and the first and third counts are bad for the reasons already assigned. The fourth count charges that the directors did receive, and did then and there authorize and permit the cashier of the said bank to receive &c. It is alleged that this makes the count double. But the words italicized may be rejected as surplusage. The count is bad, however, because it is not alleged that the exchange was made on account of the bank.
The fifth count only charges that the defendant authorized *580 and permitted the cashier to make loans and discpunts pj directors &c. It should have been directly and positively alleged that the defendant made loans and discounts. The count is also bad for not averring the concurrence of other directors.
The sixth count is bad for the reason last mentioned; and also for duplicity. It is like the eighth count in the suit against Colvill.
In the suit against Tallmadge, the first, third., fourth and fifth counts are had for the reasons already assigned. The complaint in the sixth count is, that the defendant procured and caused to be loaned to himself, so being a director, by the cashier of the hank, a large sum of money <fcc., whereby the loans and discounts to directors were made greatly to exceed one third part of the capital stock of the bank &c. So far as relates to this action, I do not see that loans made to the defendant differ from those made to other directors. This is a statute action, which can only be maintained for the acts of the directors as a body. It should have been alleged that the defendant had the concurrence of other directors: and instead of saying, that the directors procured and caused to be loaned by the cashier, the allegation should have ‘been direct and positive, that the directors made the loan. The proof may be that they authorized or directed the cashier to make it. But a party must plead facts—not the evidence of facts. The count is bad; and so is the seventh, which is framed in the same way.
I have noticed all the causes of demurrer which were mentioned on the argument. The conclusion from what has been said is, that in each of the suits the plaintiff is entitled to judgment on the demurrer- to the second count; and the defendant is entitled to judgment on the demurrers to all the other cqunts. The parties may amend on the usual terms.
Ordered accordingly.

 The 1st and 10th sections of the statute are as follows :
“ § 1. It shall not be lawful for the directors of any monied corporation,
1. To make dividends, except from the surplus profits, arising from the business of the corporation:
2. To divide, withdraw, or in any manner pay to the stockholders, or any of them, any part of the capital stock of the corporation ; or to reduce such capital stock, without the consent of the legislature:
3. To discount or receive any note or other evidence of debt, in payment of any instalment actually called in and required to he paid, or with the intent of providing the means of making such payment:
4. To receive or discount any note or other evidence of debt, witír the intent of enabling any stockholder to withdraw any part of the money paid in by him, on his stock:
5. To apply any of the funds of their corporation, except surplus profits, directly or indirectly, to the purchase of shares of its own stock:
6. To receive any such shares in payment or satisfaction of any debt due to their corporation, except as hereinafter provided:
7. To receive from any other stock corporation, in exchange for the shares, notes, bonds, or other evidences of debt of their own company, shares of the capital stock of such other corporation, or notes, bonds, or other evidences of debt, issued by such other corporation
8. To make any loans or discounts, if the corporation have banking powers, by which the whole amount of the loans and discounts of the company shall be made to exceed three times its capital stock, then paid in, and actually possessed :
9. To make any loans or discounts to the directors of such corporation, or upon paper upon which such directors, or any of them, shall be responsible, to an amount exceeding in the aggregate, one third of the capital stock of such corporation actually paid in and possessed ; but no securities taken for any such loan or discount, shall he held invalid.” (1 R. S. 589.)
“ § 10. Every director who shall violate, or be concerned in violating any provision, in the preceding sections of this article contained, shall be liable personally to /the creditors and stockholders respectively, of the corporation of which he shall be a yf director, to the full extent of any loss they may respectively sustain from- such viola(■tion.” (Id. 591.)