BERNHARD GRADLE *et al.*

*v.*

JOHN HOFFMAN.

*Filed at Ottawa November 20, 1882.*

1. JUROR—*competency.* A person proposed as a juror stated, on his *voir dire*, he had read an account of the case in the newspapers, but remembered no part of what he read,—that the account made no impression on his mind, and that he, at the time he was examined, had no impression, and it would not require evidence to remove any impression, but said if the evidence was evenly balanced it might be difficult to decide: *Held*, that he was impartial, and qualified.

2. OFFICIAL BONDS—*bond of deputy sheriff—of its form and validity.* The statute authorizes a sheriff to take a bond from his deputy, but prescribes no form for the condition. That being so, mere technicalities should not render such bond void. Unless the condition is contrary to public policy or in contravention to the law, such a bond should be upheld and enforced.

3. In this case the bond of a deputy sheriff given to his principal, after reciting: "Whereas, the above bounden (deputy) has, by the said (principal), sheriff, been duly appointed deputy sheriff," contained this condition: "Now, if the said (deputy) shall well and faithfully perform all the duties of the said office as deputy sheriff that are or may be required of him by law, then," etc.: *Held*, the condition was sufficiently explicit, and the bond was a valid one.

4. On the objection that there was no such office as deputy sheriff, as described in the condition of the bond, it was held this did not matter, as the obligors undertook that the deputy should perform all the duties the law imposed upon him, whether the deputyship was an office or a mere place. Moreover, it was considered the word "office," used in the condition, might as well be referred to the office of sheriff as to that of deputy. The bond was valid and binding, either as a statutory bond or as a common law obligation.

5. SAME—*duty of the obligee towards the sureties—and as to representations by him to them.* The mere fact that a sheriff or his principal deputy may have known that another deputy did not make return of executions in his hands promptly on the return days thereof, and still retained him in office, will afford no defence by the sureties of the deputy so in default in an action on his bond to the sheriff to recover for moneys collected on executions, and embezzled by such deputy, when the sheriff had no knowledge of the deputy's misappropriation of moneys collected by him, and nothing was brought to the sheriff's notice to lead him to an inquiry into the conduct of the deputy.

6. If, however, a sheriff has knowledge that his deputy, from whom he has taken a bond of indemnity, with sureties, is misappropriating moneys collected by him on executions, and is a defaulter, or is notified of that fact by credible persons, or made aware of it by facts and circumstances, it becomes his duty to require the deputy to settle, and remove him from office, and give notice to his sureties; and if he fails to discharge this duty, and keeps him in office, it will be a fraud on the rights of the sureties.

7. A sheriff informed persons about to become sureties on the bond of a deputy that it was a rule of his office that all deputies collecting money under executions should report daily and settle for the money so received, and thereby insure the faithful conduct of the deputies, and prevent defalcation in paying over such money, and in case any of them failed to so report he should and would remove him from office. It was *held*, a failure of the sheriff to remove a deputy for a neglect to make such a report daily, where such representation did not appear to have been fraudulently made, but such was the rule of the office, except that no one had been removed under it, would not operate to release the sureties upon the bond of the deputy, to whom such statement was made. Such statement, if anything, was a contract, and it did not go to the execution or consideration of the bond, nor did it operate as a release as to the sureties, although broken and not performed.

8. PLEADING AND EVIDENCE—*proof of particulars under general breach.* A declaration on a bond given to a sheriff by his deputy showed the execution of the bond, with a condition that he should perform all the duties of the office of deputy sheriff required of him by law, and one breach assigned was, that he did not perform all the duties of the office required of him by law, but neglected and refused to account for and pay to plaintiff divers sums of money, in all $5000, which were received by him as such deputy sheriff, which it was his duty to pay to plaintiff: *Held*, that under this general breach it was competent to prove various defaults on the part of the deputy in respect to the payment of moneys collected by him on execution, although the particular defaults were not specified in the declaration. The general rule is, that the plaintiff may assign the breach generally, by negativing the words of the covenant or condition.

9. PLEADING—*plea waives grounds of demurrer.* A party by pleading over after his demurrer is overruled, waives all grounds of demurrer. He can not both demur and plead to the same pleading at the same time.

10. SAME—*plea not responsive to declaration, etc.* To a declaration upon the bond of a deputy sheriff to recover moneys collected and not paid over, the defendants pleaded that there was no record of the recoveries or of the executions named in the declaration; and that no such executions ever existed and came to the hands of the deputy, and prayed that these facts might be tried by the court: *Held*, that as the declaration contained no averment of the recovery of any judgments, or that the executions were of record, the plea was not responsive to the declaration, and the first part

neither denying any fact alleged nor confessing or avoiding any averment, it was clearly bad on special demurrer; and so was the averment that such executions never existed, etc., this being a question of fact, not to be tried by the record.

11. JUDGMENT—*when in excess of affidavit of merits.* A judgment for a greater sum than the amount claimed in the plaintiff's affidavit of merits is not erroneous, where the excess is made up by the allowance of interest from the time the affidavit was made until the recovery.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding.

Mr. ALLAN C. STORY, for the appellants:

Plaintiff below utterly failed to make a case. *Hibbard* v. *McKinlay,* 28 Ill. 240; *Land* v. *Patterson,* 3 Stew. 307; *Ellison* v. *Stevenson,* 6 T. B. Mon. 276; *Parker* v. *Kent,* 1 Ld. Raym. 658; Bouvier's Law Dic. title "Deputy;" Rev. Stat. 1874, chap. 125, secs. 2, 7, 12, 13, 16, 23; Constitution of 1870, art. 10, sec. 9, art. 6, secs. 20, 22, and art. 5, sec. 14.

The liabilities of sureties can not be extended, by implication, beyond their express undertaking. *United States* v. *Cheeseman,* 3 Sawyer, 425; *Miller* v. *Stuart,* 9 Wheat. 703; *United States* v. *Boyd,* 15 Pet. 207; *Leggett* v. *Humphreys,* 21 How. 76; *Morton* v. *Thomas,* 24 id. 317; *Smith* v. *United States,* 2 Wall. 235; *Palmer* v. *Foley,* 21 N. Y. 106.

The court erred in rejecting the challenge of juror Wright. *Davis* v. *Walker,* 60 Ill. 472; *Chicago and Alton R. R. Co.* v. *Adler,* 35 id. 344; *Winnesheik Ins. Co.* v. *Schueller,* 60 id. 465; *Plummer* v. *People,* 74 id. 366.

The bond in this case is not authorized by any law. The only bond a sheriff takes of his deputy is one of indemnity. Rev. Stat. 1874, chap. 125, sec. 7.

In all statutory bonds *colore officii,* if the condition is broader than is permitted or prescribed by the act, the bond is void. *Sullivan* v. *Alexander,* 19 Johns. 233; *Thompson* v. *Lockwood,* 15 id. 256; *Kidwelly* v. *Brand,* Plowd. 60; *Bank*

*of Buffalo* v. *Boughton,* 21 Wend. 57; *Love* v. *Palmer,* 7 Johns. 159; *Strong* v. *Thompkins,* 8 id. 98; *Commonwealth* v. *Bassford,* 1 E. D. Smith, 233; *Morange* v. *Edwards,* id. 414; *People* v. *Meighan,* 1 Hill. 298; *Millard* v. *Canfield,* 5 Wend. 61; *Motton* v. *Campbell,* 37 Barb. 182.

The court should have given judgment for appellants upon their fifth and seventh pleas. Rev. Stat. chap. 125, secs. 12, 13, 16, 17, 18; *Dukes* v. *Rowley,* 24 Ill. 210; *Planing Mill Lumber Co.* v. *Chicago,* 56 id. 304; *Pickering* v. *Day,* 3 Houst. 522; *Wells* v. *Gant,* 4 Yerg. 491; *Cane* v. *Caldwell,* 3 Johns. 384; *Wood* v. *Jefferson Co. Bank,* 9 Cow. 194; *Rathbun* v. *Warren,* 10 Johns. 587; *People* v. *Janson,* 7 id. 332; *Peel* v. *Tatlock,* 1 Bos. & P. 419; Brandt on Suretyship, 494, 495; *Charlotte, C. and Aug. R. R. Co.* v. *Gow,* 59 Ga. 685; *Smith* v. *Bank of Scotland,* 1 Dowl. 272; *Graves* v. *Lebanon Nat. Bank,* 10 Bush, 23.

The affidavit of plaintiff's claim filed with the declaration is a pleading, and limits the amount he is entitled to recover. Rev. Stat. 1874, chap. 110, secs. 36, 37; *Russell* v. *Hubbard,* 59 Ill. 338; *Healey* v. *Charnley,* 79 id. 292; *McKenzie* v. *Penfield,* 87 id. 38; *Haggard* v. *Smith,* 71 id. 226; *Kern* v. *Strasberger,* id. 303.

Where the judgment exceeds the *ad damnum,* it will be reversed. *Rives* v. *Kemler,* 27 Ill. 291; *Kelley* v. *Third Nat. Bank,* 63 id. 541; *Oaks* v. *Ward,* 19 id. 46; *Walcott* v. *Holcomb,* 24 id. 331.

Messrs. ROBINSON & GREEN, for the appellee:

The appellants, by abandoning their demurrer and pleading to the whole declaration, admitted its sufficiency, and can not now assign the decision upon it as error. *American Express Co.* v. *Pinckney,* 29 Ill. 392; *Harmon* v. *Thornton,* 2 Scam. 351.

The first breach in the declaration is well assigned, and under it all the executions offered in evidence were admissible. *Hughes* v. *Smith,* 5 Johns. 157.

The bond in suit was voluntarily executed. As it neither contravenes any statute nor any rule of public policy, it is, in any aspect, a good common law obligation. *Mix* v. *People*, 86 Ill. 329; *Todd* v. *Cowell*, 14 id. 72.

The special demurrers to appellants' fourth, fifth and seventh amended pleas were properly sustained. *Gage* v. *Lewis*, 68 Ill. 604; *Crane* v. *Newell*, 2 Pick. 611; *Andrews* v. *Beales*, 9 Cow. 693; Brandt on Suretyship, sec. 351.

There was no duty resting upon the plaintiff to make known to appellants the default of Seligman, when discovered. *Roper* v. *Sangamon Lodge*, 91 Ill. 518.

The neglect of the obligee in a penal bond to discover the default of the principal obligor, when he might have done so, is no defence to the sureties. *Trent Nav. Co.* v. *Harley*, 10 East, 34.

The appellants having been allowed upon the trial to offer evidence of the matters set up in their special pleas, the judgment will not be reversed, even if the demurrers to them were improperly sustained. *Reichert* v. *Koerner*, 54 Ill. 306; *Jones* v. *Bank*, 34 id. 313.


Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of debt on a penal bond having this condition: "Whereas, the above bounden Benjamin H. Seligman has, by the said John Hoffman, sheriff, been duly appointed deputy sheriff of Cook county; now, if the said Benjamin H. Seligman shall well and faithfully perform all the duties of the said office as deputy sheriff that are or may be required of him by law, then this obligation to be void, otherwise the same shall remain in full force and effect."

The declaration contained a general breach that Seligman did not perform all of the duties of the office of deputy sheriff required of him by law, but neglected and refused to account for and pay to plaintiff divers sums of money which

were received by Seligman as deputy sheriff, and which it was his duty to account for and pay to plaintiff. There were also other special breaches that various executions were delivered to Seligman, upon which he collected moneys which it was his duty to pay to plaintiff, but to do which he failed and refused. Defendants filed a general demurrer to the declaration, which was overruled. Defendants thereupon filed a number of pleas. A demurrer was sustained to the fourth, fifth and seventh pleas, and defendants abided by their pleas. Issues were joined on the other pleas, and a trial had, and the jury found a verdict for the penalty of the bond, and $2351.36 damages. A motion for a new trial was overruled, and judgment entered on the verdict, and defendants appealed to the Appellate Court, and now to this court.

It is urged that the court erred in rejecting a challenge to a juror on the ground that he had read an account of the case in the newspapers. The juror stated on his *voir dire* that he remembered no part of the account he thus saw and read,—that the account made no impression on his mind, nor had he then any impression, and it would not require evidence to remove the impression. He said if the evidence was evenly balanced it might be difficult to decide. We regard the juror as impartial, and qualified. Such a juror would no doubt regard an instruction of the court as to his duty in case the evidence was evenly balanced.

It is insisted that the bond sued upon is void, and no recovery can be had on it. The statute authorizes the sheriff to take from his deputy a bond, as security for his indemnity. The statute prescribes no form for the condition of such a bond, and in the absence of such a provision mere technicalities should not render it void. Unless the condition is contrary to public policy or in contravention of the law, such bonds should be upheld and enforced. The condition of this bond is neither, and we are unable, for any reason, to say it is inoperative. The conditions are sufficiently explicit and

free from doubt, and were agreed to by appellants when they signed the bond.

But it is said that there is no such office as deputy sheriff, and Seligman is described as such an officer in the condition to the bond. A deputy sheriff performs the functions of the office of sheriff. He occupies the place and performs the duties of an officer, and it does not matter whether he in fact is an officer or only occupies the place and performs the duties. Such deputies are generally known and designated as officers. But if it were not so, defendants in their bond designate him an officer, or his place as an office, if the construction of appellants must be adopted. But the word "office," used in the condition, may refer as well, or better, to the office of sheriff as to that of deputy. Appellants, by this bond and its condition, undertook that Seligman should perform all the duties the law imposed upon him, whether the deputyship is an office or a mere place. This is the manifest and unmistakable meaning of the condition, and as it is not prohibited by law it must be held sufficient, either as a statutory or a common law bond.

It is insisted that the general breach is insufficient to authorize different defaults in the collection of money by Seligman, and never paid to plaintiffs, to be proved under it. No reason is perceived why this is not a good breach. The condition to the bond undertakes that he shall perform all of the duties of deputy sheriff. It is conceded that it was his duty to pay to the sheriff moneys received as deputy sheriff, and the breach avers he did receive moneys as deputy sheriff, and did not pay them over. This is clearly the averment of a breach of the bond. We are aware of no rule that requires such a breach to be specific as to all of the minutiæ and details of the breach. In the case of *Hughes* v. *Miller*, 5 Johns. 168, breaches as general as this were held good. Ch. J. KENT there says: "The breach is assigned in the words of the condition, and the assignment necessarily

amounts to a breach, and when that is the case, the general
rule is that the plaintiff may assign the breach generally, by
negativing the words of the covenant." And the doctrine of
that case, it is believed, has prevailed uniformly since, if not
before, its announcement. Under this breach plaintiff was
authorized to introduce evidence of Seligman's default in
failing to pay money collected by him, as such deputy,
whether specified or not in the declaration.

It is also urged that all the breaches are bad because they
only aver that Seligman failed to pay the money to the
sheriff, when he had the same power to pay it to the plain-
tiffs in execution that the sheriff possessed, and this being
true, the breaches should have averred that he had failed to
pay the money either to the sheriff or plaintiffs in execution.
Conceding this to be true, it rendered the declaration obnox-
ious to a demurrer. To have availed of the error, appel-
lants should have abided by their demurrer when it was
overruled, but they pleaded over, and thereby waived this
ground of demurrer. A party can not, under well recog-
nized rules, both demur and plead to the same pleading at
the same time. The ground of demurrer was waived by
pleading over. Defendants, however, might have pleaded
and proved the payment of the money to plaintiffs in execu-
tion, as a defence. This they omitted to do, and therefore
have no ground of complaint. Could they have proved such
a defence they would no doubt have interposed such a plea.

It is claimed there were variances between the executions
offered in evidence and those set out in the special breaches.
We shall not stop to inquire whether there was such a variance,
as they were properly admitted under the general breach.

The fourth plea avers that there is no record of recoveries
or of the executions named in the declaration, and that no
such executions ever existed and came to the hands of Selig-
man, and prays that these facts may be tried by the court.
The plea is not responsive to the declaration, as there are no

averments that any judgments were recovered, nor is there any averment therein that the executions were of record. This part of the plea traverses no averment in the declaration, nor does it confess and avoid any averment, and for that reason it was clearly bad on special demurrer. The other averment, that such writs never existed or were in the hands of Seligman, is the averment of a fact, and could not be tried by the record, hence the conclusion of the plea was certainly obnoxious to a special demurrer. The question of whether these writs ever were in the hands of Seligman, was one that plaintiff had a right to have tried by a jury. There was no error in sustaining the special demurrer to this plea.

Did the fifth amended plea present a defence to the action? Did the mere fact that the sheriff or his principal deputy knew that Seligman did not make return of writs in his hands on the return day, and the fact that Seligman was not removed, constitute a defence? There is no averment that either knew, or had other reason to believe, that Seligman was misappropriating moneys collected by him on executions in his hands. The mere fact that he was not prompt in returning such writs is not evidence that he was guilty of the crime of embezzlement. The plea fails to aver such knowledge or such gross negligence as to release appellants on their bond. Had the sheriff known Seligman was misappropriating the money, or had he been so notified by creditable persons, or had facts transpired that showed he was so misbehaving, then it would have been his duty to have required Seligman to settle, and removed him from office. But the plea avers no such facts. The plea avers no facts that charge any knowledge on the part of the sheriff that Seligman was a defaulter. Hence there was no fraud in failing to notify the sureties that Seligman had failed to return some executions on the return day.

As to the seventh plea, it avers that appellee, to induce appellants to sign the bond, informed them that it was a rule

of the office that where money could be collected on process by deputies holding the same, they should report daily and settle for the money thus received, and thereby insure the faithful conduct of the deputies, and prevent defalcation in paying over such money, and in case any one of them failed to so report, appellee should and would remove such deputy, and advise the sureties thereof, but Seligman did fail to so report, and appellee failed to remove him, and that after such failure to report, the executions upon which the money was collected came to Seligman's hands, and the money sued for was collected. It appears from the evidence that the rule of the office was as stated, except there was no proof that any deputy was ever removed, or that the rule was enforced with Seligman. There is no averment that the representation was fraudulently made, or that appellee did not, when made, intend to enforce the rule. The averment shows that the representations were made, and the presumption, till rebutted, is that it was fair and honest. Again, this is not pleaded as a failure of consideration, or that the bond was obtained by fraud and circumvention. The plea avers neither. If anything, it was a contract, which appellee has broken and failed to perform. It does not go to the execution or consideration of the bond, nor does it operate as a release, and not being made for fraudulent purposes, it can not operate as a bar.

It is claimed the evidence does not warrant the amount found by the jury. If that is a question we could consider, the testimony is ample to sustain the amount found. It is also claimed that the amount found is greater than the amount claimed in the affidavit of merits. This is no doubt true, but allowing interest from the time that affidavit was made, until the recovery, the sum found is not too large, and in this there was no error.

Appellants failing to show error in the record, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*